The next case, number 24-1532, number 24-1614, and number 24-1734, Wayne Orkin v. Lisa Sue Albert et al. At this time, would counsel for the appellant please introduce himself on the record to begin. Good morning, Your Honors. Jason Tauchus for the appellant, Wayne Orkin. I'd like to reserve two minutes for rebuttal. You may. May it please the Court. The District Court committed error when it found that Mr. Orkin started Boost Web in 2012 in the Dominican Republic, that he asked his sister to incorporate the business in Florida in 2013, that he generated all of the business for the corporation, all of the revenue, all of the money that was going into the Boost Web account was generated by him, that he had implied authority to conduct the day-to-day affairs of the corporation, and that he had the authority to sign agreements for Boost Web with all the other companies that Boost Web did business with, that he was the only person who interacted with all of the other companies that Boost Web did business with, and that Mr. Orkin spent Boost Web funds for Boost Web expenses, personal use for investment in other businesses, as he saw fit and without objection from Ms. Albert, but it found that he had no authority to use Boost Web funds for personal expenses or other business expenses. In terms of the conversion claim, which I think you're speaking of now, your position is that over a course of acquiescence and ratification, that can provide authority to Mr. Orkin. Do you have case law that supports that argument? Let me say it again. I'm sorry. Do you have any case law that supports your position that a course of acquiescence and ratification can provide authority? So, Your Honor, in Florida Power and Light, which is quoted by the district court, I believe the district court was wrong when it said that Florida Power and Light stated that a corporation or principal needs to ratify every action of an agent in order for that action to be valid. Florida Power and Light says that the principal need only ratify the agent. Here, Mr. Orkin was acting on behalf of Boost Web for everything, and he generated everything for the company, and therefore there was no objection from Ms. Albert or from Boost Web to his conduct, and therefore he had the implied authority. So I'm a little puzzled here. Are you saying if you form a corporation and you're the sole owner, and you, through your efforts as an employee of the corporation, generate funds that are paid to the corporation, you can take some of those funds for personal expenses? Is that what you're saying? No, I'm not saying that, Your Honor. Okay. What I'm saying is that there was no owner found by the district court in the amended order. We found that Ms. Albert was the principal. I am saying that there was no discussion about compensation, that Mr. Orkin generated all of the funds in this case, that customarily he would, as an agent in this case, he would get 80% of the funds, and he took no salary in this case. And very often in 2018 and 2019, the funds that he had for personal use, Ms. Albert signed off on him getting a W-2 for those items, that they did a reconciliation, and for those items that he had for personal use, they would have them, she would sign off on a W-2 that would then become his compensation for that year. That's their method of accounting. And in this case, where that's the way that they did business, then that's the authority that he had in order to continue doing that. So you're saying you can't just take corporate money to pay personal expenses, but you can take corporate money as a salary if you follow the proper procedures and it's authorized, and then you can spend the salary on whatever you want. I'm saying that in this case, yes, that it was authorized by the corporation. And it was an after-the-fact authorization by his sister. Your Honor, in terms of after-the-fact authorization, I don't believe it's after-the-fact authorization unless you say for the first time that he, say the first time was in 2018, that it was then, again, in 2019 that happened, so that at some point it's not an after-the-fact authorization. In fact, if it's no objection to it, and he is the director, he's acting as the managing director with implied authority to run the business, then this is the, then he has that authority. And so you're saying the error by the district court was in treating that transfer of funds as improper. The error by the district court is in treating the fact that they say that he didn't apply, that he didn't provide receipts to show his expenses, that that qualifies as conversion under Florida law, and that they're saying that he didn't have the authority to sign the residual redirect agreement when he signed every other agreement, that that is an error, Your Honor. And additionally, in terms of the undocumented receipts, the district court found that the undocumented receipts were evidence that he didn't have authority. But all they are is evidence, for tax purposes, of 1099. And the district court used this as proof of an unauthorized taking and proof of a proper demand and refusal under Florida law, when nowhere in Florida jurisprudence does it say that not providing receipts is an unauthorized taking, or that it is a proper demand and refusal under Florida law. If I may continue. In terms of the permanent injunction, we ask that the court lift the permanent injunction, because the district court erred when it found that under the All Writs Act and the Anti-Injunction Act, that it didn't state that there was a substantial justification to enjoin the Florida action in this case. Substantial justification can be found when there is excessive litigation, when there is a, but not in this case, where there are two different causes of action that are being tried in two different courts. And if there is an issue of res judicata, it can be taken care of by, or it can be addressed by the Florida courts. Could you speak to that more specifically? How do you see the difference between the Florida court and this one? Yes, Your Honor. So for the Florida court, it's asking for a declaratory judgment over Boost Web to determine the equitable ownership of shares. The district court in this case found that there were no shares, that nobody owned any shares, that there were shares, but neither Lisa Albert nor Wayne Orkin owned any shares. Therefore, there is no owner of Boost Web. It never stated in its order that there was an owner of Boost Web. And that is what the Florida action is trying to determine. And if you, the Florida action under Florida law, in the statute 607.010, the only persons who can own a corporation are the ones who have been issued shares. Now, Florida courts, under Hyman v. Dowd, are authorized to determine in equity who is an equitable shareholder based on the amount of work that they do, based on the amount of money that they give the corporation. Is your argument that Judge Guzman did not decide the question of equitable ownership? And you seem to concede that legal ownership is not what's at issue in Florida. You've styled it as equitable ownership. Equitable ownership of shares, yes, Your Honor, which would mean legal ownership of the corporation. And has there been an answer filed in, who are the defendants in? Lisa Albert, Your Honor. But not the company? I believe that it's Wayne Orkin and Boost Web versus Lisa Albert and Boost Web. And so I believe it is the company as well. On the assumption your client has standing to represent Boost Web. All right. Yes, Your Honor. Has an answer of any sort been filed? There has not been an answer. The case was enjoined prior to an answer being filed. And when was this case filed? It was filed, I believe, in the end of April of last year, Your Honor. Okay. And so when you opposed the injunction in federal court, was the issue of equitable ownership raised as did they argue, your opponents argued that the federal court had already decided the issue of equitable ownership? Yes, Your Honor. Okay. And what is your position on that? Our position is that there is no, that there was no decision on equitable ownership. And as the Supreme Court said.  Because there was no, because the district court found that there were no shares. Never stated anything about equitable ownership. Stated that no shares had been issued. And Ms. Lisa Albert stated that she did not own any shares. Those were the findings of the district court. Okay. So all of the district court held from your objection is you only made a finding that there were no shares owned by particular people. So it is an equitable issue. And that issue is open. And we can litigate that in the Florida court. Yes, Your Honor. Okay. And that the decision of the district court was not based on ownership. It was based on position as an officer of the company, which does not require ownership of shares. And so that's, and also in terms of the, there was in the discussions or in the hearings, the district court did state that they found that Ms. Albert was owner of Boost Web. And also stated that she, her order was so that Lisa would get the money. But at the same time, under the Supreme Court's ruling in Chick-fil-A, the work of the appeals court is not to look at a post hoc interpretation of the district court's order, but to look at the order as it was written. And so in this case, with the district court resolving the issues based on implied authority and Ms. Albert as an officer and principal of the corporation and not as owner, that the Florida action, if I may finish. Okay. Bear with me for a minute. So you say it's, the district court did hold as part of its TRO that implicit in its decision was that Lisa was the owner. That's separate from the fact that it issued an order that payment be made to Lisa. Okay. You come in, in the Florida court, and you say in essence, no, we aren't obligated to make any payment to Lisa. Because the issue of equitable ownership is still up in the air. I kind of view those as two separate buckets of reasons given by the federal court in issuing the injunction. Your argument that an implied or a statement, this is what was implied, is one argument that you say that's not good enough. But there was also a direct order of payment which you haven't complied with, I take it, your client hasn't complied with, and which you're trying to stop from happening by re-adjudicating whether that direct order of payment is valid by saying, oh no, she's not even an equitable owner. Your Honor, what I'm saying is that when the district court said that she made an order that Lisa get the money, that was not what her order states. Her order states that Boost Web gets the damages in this case. The order never mentions Lisa Albert as receiving any money, and that because the order stated that Boost Web would get the money, the court had not determined who Boost Web was. But isn't the Florida action, I'm sorry, okay, I accept your correction, thank you. But isn't the Florida action nonetheless an effort to stop payments to Boost Web? It's not an effort to stop payments to Boost Web. It's determined based on when the payments are made what is going to be the share once the percentage share of the corporation is determined by the lower court. So the payments can still be made, but in terms of distributing those money, if those funds, if they're considered profits, where those funds are going to go, Your Honor. All right. Thank you. Thank you, Your Honor. Thank you, counsel. At this time, would counsel for the appellees please introduce themselves on the record to begin? Good morning. Please, the court. Good morning. My name is Erwin Schwartz. I'm counsel for Lisa Albert and for Boost Web. I'd like to start by pointing out what's not in dispute. There has been no dispute that the factual determinations by Judge Guzman were clearly erroneous. Nothing in the briefs suggests that her decisions were clearly erroneous under the standards that have been set forth by this court. And so accordingly, we can understand that there's no dispute that all the residuals relating to the conversion claim, all the residuals that were deposited in Boost Web after 2014 included all the merchants that Mr. Orkin originated. He said he originated after 2014, and he in fact admitted at trial that those were Boost Web accounts cited by the judge. There's no dispute that there was no agreement between Mr. Orkin and Ms. Albert or anybody else that would allow him to use Boost Web funds for personal expenses or other business expenses. That's not true. Well, he claims, I think he, as I understand his argument presented here today, he claims that money was compensation to him. Oh, well. Yes, I heard that today, Your Honor. In the court below, what he said is he could do anything he wanted with the money. In fact, their opening argument was Wayne Orkin is Boost Web, and Boost Web is Wayne Orkin completely disposing of any corporate bail. So to the degree he wants to contend now that that was compensation, which is not what he contended below, I would still suggest, Your Honor, that that doesn't overcome the trial court's finding that he embezzled that money because there was no agreement that he could use it for personal expenses or for other business expenses as the trial court found. Counsel made reference to a W-2? Yes. That was in a previous year in which there was, well, there wasn't much testimony on it, but based on what was in the record, Mr. Orkin was issued a W-2 in a previous year in a relatively modest amount. I don't believe there was evidence in the record as to how that W-2 was calculated. There was a lot of evidence in the record as to how the 1099s that were issued for 2020 and 2021 were calculated, which had to do with the process that we heard a little bit about earlier today where Mr. Orkin would spend the money of the company and then after the fact account to some degree or another as to which were personal expenses and which were expenses for other businesses and which were OOSWEB expenses. But as the trial court found, there was an accounting order that required him to articulate exactly under oath what money he spent that was OOSWEB expenses for 2020 and 2021, and he identified none for the period up to the time that he diverted OOSWEB revenue to his friend's company, MKY. So the trial court relied on that in finding that the amounts for which the 1099s were issued prepared by the company's accountants with the assistance of Ian Albert, who was a witness and a testifier, that that was the amount that Mr. Orkin embezzled, inverted from the company with no evidence that he actually had an agreement that he could do it that way or that, in fact, that number was inaccurate because there was some amount that, in fact, were proper OOSWEB funds. Maybe you could help me on this series of questions. I just asked your opponent. The Florida actions can be viewed, is it accurate to view it as an attempt to evade the order to pay OOSWEB? Your Honor, I think it's an attempt. And you said his argument was I am OOSWEB. He's going to argue I'm the 100 percent owner of OOSWEB, and therefore there's no payment obligation to OOSWEB. That seems to be the logic of it. Yes, Your Honor, I would say he would take the position that he'll pay the damages to OOSWEB and they'll go right back in his pocket because if he has the money to do it or he could discharge the amount that the judge ordered because he's OOSWEB and could release himself from that. And I'd like to address Your Honor's assumption that there are these two buckets because as I read the authority from this court, the question that Judge Guzman should have been thinking about is had she made a final decision with respect to the nucleus of operative facts that underlie the court, her judgment. Well, you know, the order does not say that Lisa Albert owns OOSWEB. All we have is this statement that, gosh, that's implied in my rulings, but it's not in an order or a judgment. Yes, Your Honor, the order does say that, look at my notes, but I believe it says that Wayne Orkin owns nothing of OOSWEB on paper. It uses the words on paper because all of the corporate documents reflect that only Lisa Albert was the founder and original officer and shareholder of the company. The court didn't say that Wayne Orkin did not own OOSWEB at all. She said that Wayne Orkin did not own OOSWEB on paper. But, Your Honor, what I would suggest is that the analysis as to whether she was correct in enjoining the action in Florida turns on whether or not the argument that Mr. Orkin owns OOSWEB 100% in equity should have been raised in front of her as part of the case below. And, in fact, there are specific allegations in the OOSWEB complaint that Lisa Albert owns all of OOSWEB, which were denied. And the judge points out that in the stipulated issue for resolution at trial, the question of who owns OOSWEB was one of those issues. So under the Fernandez-Vargas case, which I think is cited by both sides, the question is, is her decision res judicata, or could it be, with respect to the action in Florida? And this court gave some very helpful guidance in Apparel Art v. Amortex, which said that we follow the transactional approach to determine the identity of underlying claims and causes of action, which the court explained means look at all the allegations in the complaints. Are they the same? Is it the same transaction or set of transactions upon which the party is seeking relief in the second case? In the second case, in the Florida case, paragraph after paragraph were lifted directly out of Judge Guzman's order. They changed the numbering of some of the paragraphs, but there were at least two dozen paragraphs or at least 20 paragraphs that were identical or close paraphrases of whatever order it is. So if you're correct, then what we have, we don't have that a claim was decided in this proceeding. What we have is merger and bar claim preclusion of a claim that although it wasn't raised here, it's so related to it, it should have been raised. That's right, Your Honor. And that is an alternative grounds for issuing an injunction of this type, but it seems to me as I read some of the case law, it disfavored grounds. You need to have some additional justification. Well, Your Honor, she did have additional justification because she found that the Florida action, she called it judicial hopscotch to try to overcome her previous decision. That language was actually in her contempt order, but it was relating to the filing of the Florida action. Doesn't some court sometime have to eventually decide who owns the corporation? Well, I believe that Judge Guzman thinks that she decided already, Your Honor. And what language do you point to in her judgment or memorandum or order that says who she decided? Well, as I mentioned earlier. Because if that's the case, you wouldn't even need to talk about merger and bar. You'd have a direct conflict. That's right. What language? The closest she came was where she said that Wayne Orkin does not own Boost Web on paper. That's the closest she came. So she didn't come out and explicitly say that he has no 100 percent ownership interest in equity. He didn't assert that, Your Honor, in either his complaint or in his answer to the Boost Web. But it sounds like we've got a corporation hanging out there and there's been no adjudication as to who owns it, other than that he doesn't own it on paper. There's no holding that he has no interest in it, equitable otherwise. There's no holding that your client owns it. Well, the holding, Your Honor, and I respect the question about the U.S. Supreme Court case saying you can only look at what the courts decided. But the holding, as Judge Guzman explained it, was that she believed that she was finding that Lisa owned it. And I would suggest that the appropriate analysis is whether or not the claim in Florida is barred because it should have been asserted or could have been asserted in the case in front of Judge Guzman. But I'm not quite getting across. Certainly if she did decide it, end of story. But if she didn't decide it, someone's going to decide it at some point. Well, Your Honor, I guess that's true. I can't argue with that. When it goes to pay a dividend, who's it pay a dividend to? And they'll have a fight over that. Well, Your Honor, I don't think that there's any fight because, according to Judge Guzman, there's no shareholders, so there's no dividend being paid. I mean, this is a closed family corporation. There has to be. How can this corporation do business or exist for years if there is no resolution as to who owns it? Well, Your Honor, I would suggest that if – I don't know how to answer Your Honor's question quite candidly because I think that Judge Guzman thinks that she resolved that question. But that's – I'm trying to – yes, that's a separate track. If she decided it, if we thought that she decided it, end of story, you win. The scenario that it seems to me is at least arguably presented is that Judge Guzman has not yet issued any order that resolves the question of who owns the corporation. Well, I would suggest that Your Honor's right that there's no explicit order that says that. I would also suggest, Your Honor, that the court look at the court's authorities as to how the district court in this instance has to review the question of whether a separate action between the same parties alleging the exact same things is properly decided by a different court or by her. If they had wanted to seek this relief, they could have. So you're saying the future action – are you agreeing that there has to be some future judicial action at some point to decide who owns the corporation but that it has to be in the U.S. District Court of Massachusetts? Well, I don't agree with the premise, Your Honor, that there has to be such a decision. Well, if there isn't one, how could there not have to be? Well, Your Honor, because the company would continue to exist as it had all the years before this lawsuit started, which is that as found by Judge Guzman, Ms. Albert was in control of the company. She was the president of the company. She controlled what happened with the company. And Mr. Orkin was her brother and was doing a lot of the work on this ground, I think as she put it. But that doesn't necessarily require that a court find who were the equitable owners of the company if no shares were formally issued. So what happens when the company then goes to pay a dividend? Your Honor, I don't – Who does it pay it to? Your Honor, you're making an assumption that I don't think is applicable to this company. This company's never paid a dividend. Well, they get lucky tomorrow. They have a brand-new customer. If the IRS takes a position, they have to pay dividends. Well, then I would say, Your Honor, that the president of the company would issue the shares if that was certainly within her power, and then there would be a way to resolve that. It'd be litigation. Well, I mean, perhaps. In a Florida court. I'm not sure that the final chapter has been written in this ongoing dispute. I thought the issue that we do have to address is whether in an exercise of its equitable powers, it could issue a preliminary injunction to stop proceedings from going forward in Florida. That raises to my mind the question of whether these – she intends to resolve these issues in this litigation in Massachusetts, and this is a sort of stay-still order. Has any – has this been discussed at all? No, Your Honor. All that's happened is that the court entered a preliminary and then permanent injunction against the prosecution of the case in Florida on the grounds that all of the facts and all of the issues that were asserted in Florida, except perhaps equitable ownership, which was asserted for the first time in Florida, had been resolved by her. She pointed out that she held five or six days of testimony on all of these issues and that she did not believe that it was appropriate to allow the Florida judge to decide the race judicata issue because she believed that she had decided that race judicata barred that claim, and that's why she entered her permanent injunction order. There was no further discussion about whether Mr. Orkin, perhaps depending on how things turn out here on all the other issues that are raised on the field, whether he might seek further relief in front of Judge Guzman. That issue has not come up, Your Honor. Whether he might seek further relief. Okay. Thank you. Yes. Your Honor, let me see if there's – I think you're over time. I'm over time. I'm sorry. I did have one further question. On the conversion claim, is it true that the money subject to that claim came out of general funds? Yes, Your Honor. The money came into Boost Web and then it was paid out to Mr. Orkin in two ways. Either he paid it directly to enterprises that were not Boost Web business expenses or he paid credit card – he paid off credit card expenses with Boost Web funds. But for a conversion claim, don't you need the funds to be identifiable? Well, the law that we cited in our brief, Your Honor, is that the identification of the amount of funds and where they came from is sufficient. So the evidence was that the money was paid by Card Connect into Boost Web's Wells Fargo account, and then Mr. Orkin used his signature authority on that account to either make cut checks that were not in the interest of Boost Web or to pay off credit card expenses that were not in the interest of Boost Web. If there are no further questions, we ask that the Court confirm. Thank you. Thank you. Thank you, counsel. At this time, would counsel for the appellant please reintroduce himself on the record? He has a two-minute rebuttal. Yes, Your Honor. Jason Tauch is for Mr. Wayne Orkin, the appellant. So we do dispute that there are, but we do say that there are clearly erroneous findings in this case. Under Calandro, this Court stated that the Court will look at the record as a whole and will overturn a finding of fact on consideration of the record, leaves it with a firm conviction that the findings, in fact, are simply wrong. In this case, that's an easy burden to meet, where the district court says on the first day of trial that the burden of proof is reversed, saying that Mr. Orkin, if he wants to be relieved of owing Boost Web money, he's going to have to establish on the record each item that he believes he is legitimately entitled to spend, rather than Boost Web proving each item that they say he converted. In this case, she took at face value that the 1099s, even though Ms. Albert stated on the record that she didn't know how the accountants figured out what to give Mr. Orkin for this 1099s and she wasn't responsible for issuing it, the district court took at face value that those amounts were unauthorized expenses, even though those amounts in the 1099s equaled the same amount as it would be necessary to run the corporation in 2018 and 2019. Also, there was no proof that was provided by the court in its findings that all of the funds were taken from the Boost Web account. In her findings, the district court said that Mr. Orkin used personal credit cards, Ms. Albert's personal credit cards as well, but only identified $63,000 worth of checks in 2021 that Mr. Orkin had made from the Boost Web account. And with that, I rely on your briefs, Your Honor. Thank you. Thank you, counsel. That concludes argument in this case.